Argued April 22; affirmed June 2; rehearing denied June 30, 1936

IN RE EDWARDS' ESTATE

(58 P. (2d) 243)

*George S. Shepherd,* of Portland, for appellants.

*C. T. Haas, Everett I. Adcock,* and *Paul C. King,* all of Portland (Barge Leonard, J. P. Kavanaugh, and Plowden Stott, all of Portland, on the brief), for respondents.

ROSSMAN, J. For a copy of the will of Thomas Henry Edwards, deceased, see *In re Edwards' Estate,* 141 Or. 595 (17 P. (2d) 570). January 24, 1934, the estate passed into the control of the trustee, the First National Bank of Portland, successor to the Securities Savings & Trust Company, named in the will. As will be observed from the will, the trustee is required to administer the estate until the death of the last survivor of the individuals named in Article XI of the will, and then to distribute the trust res to the persons mentioned in Article VII. In the meantime, the trustee is required to collect the income and make payment to the beneficiaries.

The sole issue presented by this appeal is whether the payments which the trustee is directed to make to the beneficiaries of the trust, enumerated in Article VI of the will, are to be made out of income only, or whether, in the absence of income, the trustee is required to make payments out of capital. No other issue is before us. We shall now quote the portions of the will upon which the appellants rely to sustain their contention that, in the absence of income, the trustee is required to make payment out of capital. Article IV provides: "Said trustee shall have power and authority to sell any of the real and personal property held in

trust." Article V provides: "The trustee shall collect the income from the investment and shall make payment to the beneficiaries hereinafter named in amount annually of not less than five per cent (5%) of the appraised value of this estate. * * * The object of this will is primarily to create and maintain a periodical income to the individual beneficiaries and the trusts created by this will for individual beneficiaries are made for the purpose of providing a suitable support and maintenance for such respective individual beneficiaries, * * *." Article VI provides: "To the beneficiaries I give and bequeath as follows: * * * 7. I give and bequeath unto Elaine Hamblin one-twentieth (1/20) of the income of my trust estate until such time as she married. * * * 12. I give and bequeath to James Day * * * one-fortieth (1/40) of the net income of my trust estate for the period of his life. * * *" Elaine Hamblin and James Day are the appellants. Article VI makes provision for 12 bequests, each being payable out of income.

The parties agree that the Edwards estate has produced no income since it passed into the control of the trustee (January 24, 1934). In other words, there are no funds out of which the appellants can be paid unless the trustee converts into money items which now constitute a part of the trust res.

Edwards died September 16, 1929, and his estate was appraised as worth $451,002.23. Taxes, expenses of administration, shrinkage of the value of bonds ordered sold by the court, aggregate $174,736.59. The value of the estate in the trustee's possession must, therefore, now aggregate $276,265.64. The respondent beneficiaries estimate that, if the construction for which the

appellants contend is placed upon the will, the trustee will be compelled to pay the beneficiaries at this time approximately $157,850.

■■ It is elementary that in determining a donor's intent the entire document creating the trust must be construed. Hence, in the present instance, we must examine not only the portions of the will which provide that the trustee shall collect income, make payments to the beneficiaries "of not less than five per cent (5%) of the appraised value of this estate," and which state "the object of this will is primarily to create and maintain a periodical income to the individual beneficiaries," but also the portions of the will which specify the amounts which the trustee shall pay to the beneficiaries. It will be recalled that in the instance of the appellant Elaine Hamblin her contemplated annual bequest is one-twentieth "of the income of my trust estate", and in the instance of the appellant James Day his contemplated annual bequest is one-fortieth "of the net income of my trust estate". We must also bear in mind the fact that the donor dealt with income and with capital separately. Article VI of the will disposes of income for a prescribed period of time. Article VII disposes of capital at the termination of the trust.

Construing the will, it will be observed that the portion which directs the trustee to make annual payments of not less than five per cent of the appraised value of the estate is a portion of the sentence which directs the trustee to collect the income from the estate. The will was written in the early part of 1929 when virtually all investments were returning a yield. It seems fair to assume that Mr. Edwards at that time

believed that his estate would always return a yield of at least five per cent upon the invested capital, and that he desired expressly to limit the trustee's power to accumulate a surplus. The portion which states that the object of the will is to provide an income to the beneficiaries is nothing more than a statement of the obvious. Such, undoubtedly, is the purpose of every trust. Article VI specifies the amount which each beneficiary of the trust shall receive. The amount varies with the earning power of the invested capital. In periods of prosperity it might be very large. Manifestly, at those times the trustee could not reduce the payments to a sum equal to five per cent of the appraised value of the estate. It will be observed that the bequests in favor of the appellants direct that their payment shall be made out of funds not in existence at the time of Edwards' death; that is, out of future income. The appellants were not given any interest in the trust res, but only in a fund to be created by the trust res. The latter, as already observed, is bequeathed to others, delivery to be made upon the termination of the trust. Appellants point to the sections of the will previously quoted which state that the donor's purpose was to create a periodical income for the beneficiaries, and that the trustee should make payment to them annually of an amount not less than five per cent of the appraised value of the estate. They contend that this purpose will be defeated if regular payments are not maintained. But, if capital is invaded in order to make the payments, it is evident that the payments can not be long continued. Already a loss of more than $70,000 has taken place, due to the fact that the executors, in making sales of securities, pursuant to orders of the court, obtained $70,291.25 less than

their appraised value. Respondents declare that the assets now in the possession of the trustee consist largely of the corporate stock of The Edwards Company, a retail furniture dealer. In all likelihood, if its stock is now forced upon the market in order to produce $157,850.84, a further sacrifice will be incurred. It is manifest that the purpose of the will was not only to create an income for those mentioned in Article VI but also to provide for those named in Article VII. The first group is to receive income; the second group is to receive the trust res at the termination of the trust. There is no indication in the will that the donor favored one group more than the other. Therefore, we can not be partial to one group at the expense of the other. Yet if the trust res is to be invaded for the benefit of the group mentioned in Article VI, the group named in Article VII, in all likelihood, will receive nothing.

It is our belief that the bequests provided for those designated in Article VI are payable only out of the net income of the estate, and that, since there is no net income, nothing is payable to those individuals now.

It follows from the above that the decree of the circuit court is affirmed.

BELT and BEAN, JJ., concur.

RAND, J., dissents.